UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUSTIN L. MACLEOD,

  Petitioner,

v.

MELINDA K. BRAMAN,

    Respondent,

Case No. 2:19-cv-12153

Paul D. Borman
United States District Judge

_____/

## OPINION AND ORDER (1) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Dustin Macleod, ("Petitioner"), presently on parole supervision through the Chippewa County Parole Office in Sault Ste. Marie, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for manufacture with intent to deliver between 5 and 45 grams of marijuana, Mich. Comp. Laws § 333.7401(2)(d)(ii); possession with intent to deliver marijuana, Mich. Comp. Laws § 333.7401(2)(d)(iii); felon in possession of a firearm, Mich. Comp. Laws § 750.224f; harboring a felon, Mich. Comp. Laws § 750.199(3), possession of a firearm in the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b; and being a fourth felony habitual offender, Mich. Comp. Laws § 769.12. For the reasons that follow, the petition for writ of habeas corpus is DENIED WITH PREJUDICE.

1

# I. BACKGROUND

Petitioner was convicted following a jury trial in the Cheboygan County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises from the investigation of defendant for selling marijuana to people for whom he is not a registered caregiver under the Michigan Medical Marihuana Act [MMMA], MCL 333.2641, *et seq.* The investigation included three controlled buys made using confidential informants Shawn Spohn and his girlfriend, a forward looking infrared radar (FLIR) scan of defendant's residence and of his grow house, and a comparative analysis of the energy bills of buildings similar in size and location to defendant's grow house. Using results obtained from the investigation, Detective Jess Halleck secured search warrants for defendant's residence and grow house on October 14, 2014, and members of the Huron Undercover Narcotics Team (HUNT) and of Straits Area Narcotic Enforcement (SANE) conducted the searches on the same day. Immediately prior to the search of his residence, defendant was arrested at a remote location. Defendant waived his *Miranda* rights, *Miranda v. Arizona*, 384 U.S. 436, 86 S Ct 1602, L.Ed.2d 694 (1966), and participated in a police interview with Detective Jason Varoni. Among other things, defendant admitted that he had one to two pounds of newly harvested marijuana at his house, and approximately 40 full-grown plants and an unknown number of clones in a nearby grow house. Defendant identified himself as a medical marijuana grower and caregiver for three patients plus himself, but admitted that he sold "the medicine" to whomever said they needed it.
>
> When officers knocked and announced themselves prior to searching defendant's residence, Megan MacLeod, defendant's sister, ran out the back door, toward the woods, and into the Black River, all the while with one officer yelling at her to stop, and another officer in pursuit. The pursing officer caught her in the middle of the river and turned her

over to the proper authorities. Officer Dean Tebo testified that Megan MacLeod was an absconder from the Cheboygan County Jail.

SANE's search of defendant's residence turned up marijuana leaf in bags in the master bedroom and the kitchen freezer, and 23 canisters and 14 plastic baggies with different varieties of marijuana seeds. The team also found a black digital scale, a marijuana drying rack and several firearms.

Detective Halleck testified to the search of the grow house, describing the building as square, brick, and with surveillance cameras at each corner and black material covering the windows to keep the light out. Inside, officers found a garbage can containing marijuana "shake," one grow room with six plants from four to six feet tall, another grow room with four plants from three to four feet tall, a third room with 20 plants from three to four feet tall, and a room with 92 clones. Detective Halleck testified that all or most of the clones had a root system. They also found high-powered grow lights and bulbs in each room. In addition, the grow house had a ventilation system to keep the rooms cool, and a carbon dioxide tank to pump in extra carbon dioxide to help the plants grow. Including clones, officers seized 122 plants. Random samples of 21 plants were sent to the Grayling State Police Crime Laboratory for analysis. They were examined by forensic scientist Karen Brooks, who testified that each tested positive as marijuana.

*People v. MacLeod*, No. 326950, 2016 WL 3767496, at 1–2 (Mich. Ct. App. July 14, 2016).

Petitioner's conviction was affirmed. *Id., lv. den.* 500 Mich. 946 (2017).

Petitioner filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.*, which the trial judge denied. *People v. Macleod*, No. 14-4961-FC (Cheboygan Cty. Cir. Ct., Feb. 8, 2018). The Michigan appellate courts denied leave to appeal. *People v. MacLeod*, No. 342615 (Mich. Ct. App. 22, 2018); *lv. den.* 503 Mich. 1018 (2019).

3

Petitioner seeks habeas relief on 28 grounds:

I. Did the trial court reversibly err when it denied Petitioner's motion to dismiss which was based on the State of Michigan's lack of jurisdiction to prosecute Petitioner, a member of the Sault Ste. Marie Tribe of Chippewa Indians who was gathering as allowed by the 2007 Inland Consent Decree and which also reserved federal or tribal jurisdiction for consent decree disputes occurring in the defined portions of the territory ceded to the United States in the 1836 Treaty of the United States with the Ottawa and Chippewa Nations of Indians?

II. Did the trial court err when it failed to grant a mistrial when the prosecution failed to produce endorsed witnesses and denied Petitioner his Sixth Amendment right of confrontation?

III. Did the trial court reversibly err when it granted the prosecution's motion in limine to forbid the defense to mention Petitioner's Native American heritage and denied him his due process right to present a defense?

IV. Was Petitioner denied the effective assistance of counsel guaranteed by the federal and state constitutions (U.S. Const. Am. VI; Mich. Const. 1963, Art. 1, § 20) where trial counsel (1) failed to procedurally obtain interlocutory appeal relief, (2) failed to procedurally obtain relief in federal court, (3) failed to challenge the initial stop of Petitioner, (4) failed procedurally to bring a Section 8 defense pretrial, (5) failed to bring a Section 4 defense during trial, (6) failed to challenge the inclusion of the clones in the total number of "plants" seized, (7) failed to challenge the search warrant that was based on absent confidential informants and illogical electrical bills, (8) failed to move to dismiss Megan MacLeod's "felony" arrest warrant, (9) failed to object to 404b evidence or request a limiting instruction, and (10) failed to subpoena Shawn Spohn, Jamie Lee Richards, and Detective Varoni?

V. Did the trial court reversibly err and abuse its discretion by refusing to recognize the Treaty and constitutional rights of the Petitioner, a member of the Sault Ste. Marie Tribe of Chippewa Indians, who was

exercising his "usual privileges of occupancy" rights as recognized by the 1836 Treaty of Washington when arrested?

VI. Did the trial court reversibly err when it abused its discretion by refusing to recognize its jurisdictional limits as established by statute and precedent?

VII. Did the trial court reversibly err when it adjudicated this case with a wanton disregard for the Petitioner's constitutional and Treaty-protected rights, including the Indian Civil Rights Act. The Indian Civil Rights Act of 1968 (ICRA), 25 U.S.C. §§ 1301–1304?

VIII. Did Petitioner Dustin MacLeod's conviction, judgment, and sentence for felony firearm, felon in possession of a firearm and delivery-manufacturing marijuana/possession with intent to deliver under both Mich. Comp. Law 333.7401(2)(d)(iii) and Mich. Comp. Laws 333.7401(2)(d)(ii) are void ab initio where the trial court lacked res and personam jurisdiction, in violation of the US Constitution, Article VI, Clause 2, Supremacy Clause because MacLeod's Native American sovereign rights create an immunity to prosecution under the 1836 Treaty of Washington, the 2007 Consent Decree (where §§ 1.3, 5(A)–(D), 6.2, 20.1, 24.3 were breached), federal law 25 U.S.C. § 5123(G)(H) [construed in pari materia] and the legal principle of the US Supreme Court in *United States v. Shoshone Tribe*, 304 U.S. 111, 58 S. Ct. 794 (1938) et all (regarding construction of Indian treaties) where the same provisions (including crops of all varieties, especially for medicinal purposes) while in Indian Count[r]y, as defined by and referred to in 18 U.S.C. §§ 1151–1153(A)(B), 62(A)–(C) when those Native American sovereignty rights were infringed [at the instigation of the Department of Natural Resources (DNR)] by the State of Michigan?

IX. Was the trial court without authority and jurisdiction to sentence Petitioner as a 4th degree habitual offender, in violation of the U.S. Constitution XIV Amendment and the legal principle of the U.S. Supreme Court in *Oyler v. Boles*, 368 U.S. 448, 82 S. Ct. 501 (1962) when the prosecution failed to proper[l]y file the 4th degree habitual

offender notice with the Mich. Ct. R. 6.112(F); Mich. Comp. Laws 769.13 21 days strict time limitations period?

X. Is Petitioner's convictions for delivery-manufacture of 5–45 kilograms of marijuana possession with intent to deliver 20 marijuana plants or more, but less than 200 plants, contrary to Mich. Comp. Laws 333.7401(2)(d)(ii) and delivery-manufacture marijuana possession with intent to deliver marijuana, contrary to Mich. Comp. Laws 333.7401(2)(d)(iii) a violation of the U.S. Constitution V Amendment and the legal principle of the U.S. Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180 (1932) [based on the felony information's language] for the same offense because Mich. Comp. Laws 333.7401(2)(d)(iii) is a Mich. Comp. Laws 768.32 necessarily lesser included offense of the greater offense Mich. Comp. Laws 333.7401(2)(d)(ii)?

XI. Was Petitioner denied due process of law, in violation of the U.S. Constitution VI, XIV Amendments and the legal principle of the U.S. Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712 (1986) when the prosecution deliberately used a peremptory challenge to remove the only Native American juror (Timothy Lince) because he might have empathized with Petitioner (a Native American) when that peremptory challenge was based on the race of juror Lince (a Native American) despite the spurious prosecutorial façade to the contrary?

XII. Was Petitioner denied due process of law and equal protection of the law, in violation of the U.S. Constitution VI, XIV Amendments; Mich. Const. 1963, Article 1 § 20 and the legal principle of the U.S. Supreme Court in *Duren v. Missouri*, 439 U.S. 357, 99 S. Ct. 664 (1979) when due to the Cheboygan County irregular jury empanelment procedure, the distinctive Native American, Hispanic American and AfroAmerican groups of Cheboygan County community are systematically excluded from the jury selection process and are not fairly represented in the venire, resulting in an under representation of the Native American, the Hispanic American and Afro-American during the jury selection process?

6

XIII. Was Petitioner denied due process of law in violation of the U.S. Constitution VI, XIV Amendments; Mich. Const. 1963, Article 1 § 20 due to egregious and reprehensible law enforcement misconduct in the form of collusive perjury or false testimony to the degree that Petitioner's conviction, judgment, and sentence should be reversed and the case dismissed with prejudice?

XIV. Was Petitioner denied due process of law in violation of the U.S. Constitution VI, XIV Amendments; Mich. Const. 1963, Article 1 § 20 and the legal principle of the U.S. Supreme Court in *Smith v. Massachusetts*, 543 U.S. 462, 125 S. Ct. 1129 (2005); *Bunkley v. Florida*, 538 U.S. 835, 123 S. Ct. 2020 (2003) because there was insufficient evidence to sustain his conviction for felony firearm?

XV. Was Petitioner denied due process of law in violation of the U.S. Constitution VI XIV Amendments; Mich. Const. 1963, Article 1 § 20 and the legal principle of the U.S. Supreme Court in the *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979) line of cases when his conviction for harboring a fugitive who had a felony warrant pursuant to Mich. Comp. Laws 750.199 was based on insufficient evidence to prove Megan MacLeod wasn't exempt from a felony warrant due to the applicability of the Mich. Comp. Laws 801.251, 750.195(3) and U.S. Supreme Court's doctrine of in pari materia was totally ignored by the State of Michigan?

XVI. Was Petitioner denied due process of law in violation of the U.S. Constitution VI, XIV Amendments; Mich. Const. 1963, Article 1 § 20 and the legal principle of the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984) and *Cronic v. United States*, 466 U.S. 648, 104 S. Ct. 2039 (1984) due to multiple incompetent acts (whether by omission or commission) by trial counsel Gilbert alphabetized A–U that were prejudicial to the defense of Petitioner?

XVII. Was Petitioner denied due process of law in violation of the U.S. Constitution VI, XIV Amendments; Mich. Const. 1963, Article 1 § 20 and the legal principle of the U.S. Supreme Court in *Berger v. U.S.*, 295

U.S. 78, 55 S. Ct. 629 (1935) due to cumulative prosecutorial misconduct alphabetized A–E?

XVIII. Was Petitioner denied due process of law in violation of the U.S. Constitution VI, XIV Amendments; Mich. Const. 1963, Article 1 § 20 and the legal principle of the U.S. Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004) when Petitioner was prevented from cross-examining and impeaching Jason Varoni when Patrick Holt was allowed to testify in Varoni's place and interpret Varoni's interview report with MacLeod?

XIX. Was Petitioner denied due process of law in violation of the U.S. Constitution VI, XIV Amendments; Mich. Const. 1963, Article 1 § 20 and the legal principle of the U.S. Supreme Court in *Olden v. Kentucky*, 488 U.S. 227, 109 S. Ct. 480 (1988); *Davis v. Alaska*, 418 U.S. 308, 94 S. Ct. 1105 (1974) when MacLeod was not allowed to impeach alleged confidential informant Shawn Spohn with his motive, interest and bias to entrap and dupe Petitioner into deviating from MMMA parameters, by acting under the pretext of being a Native American (similar to Petitioner) in need of medical marijuana to ease debilitating illness and with his criminal history, where he was made unavailable for trial by police and prosecution under the rule in *Reynold v. United States*?

XX. Was Petitioner denied due process of law in violation of the U.S. Constitution VI, XIV Amendments; Mich. Const. 1963, Article 1 § 20 and the legal principle of the U.S. Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004) when the trial court abused its discretion by allowing Karen Brooks to testify to a lab report prepared by an unnamed MSP lab analyst (according to the felony information) when the lab report was suppressed by the prosecution, in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1197 (1963) and Mich. Ct. R. 6.201(A)(B) to the surprise of the defense when the defense was prevented from pre-trial interview, investigating the unknown or unnamed MSP lab analyst and from impeaching the state witness with the lab report's contents?

XXI. Was Petitioner denied due process of law in violation of the U.S. Constitution VI, XIV Amendments; Mich. Const. 1963, Article 1 § 20 and the legal principle of the U.S. Supreme Court in *Michelsohn v. United States*, 335 U.S. 469, 69 S. Ct. 213 (1949) when PX 1, PX 5, PX 6 (hearsay) were admitted into evidence for their prejudicial impact or proving that MacLeod had previously committed the same crimes (but not charged with) for which he was on trial for, thereby tainting juror minds with bad man character and other uncharged similar act crimes evidence?

XXII. Was Petitioner denied due process of law in violation of the U.S. Constitution VI, XIV Amendments; Mich. Const. 1963, Article 1 § 20 and the legal principle of the U.S. Supreme Court in *Hering v. New York*, 422 U.S. 853, 95 S. Ct. 2550 (1975) when the trial court abused its discretion by precluding trial counsel from arguing Spohn's Native American ruse to convince Petitioner to violate MMMA provisions by presenting to MacLeod a MMMA registered, qualified patient card?

XXIII. Was Petitioner denied due process of law in violation of the U.S. Constitution VI, XIV Amendments; Mich. Const. 1963, Article 1 § 20 when the trial court allowed the prosecution and police officers to first influence the juror minds with their prejudicial interpretations of what the erroneously admitted PX 1, PX 5, PX 6 and PX 31 (hearsay evidence) said and meant, thereby invading the province of the jury instead of allowing the tape discs to play out in open court on the record to allow the jury to make their own independent determination of what the tape discs said and meant?

XXIV. Was Petitioner denied due process of law in violation of the U.S. Constitution VI, XIV Amendments; Mich. Const. 1963, Article 1 § 20 and the legal principle of the U.S. Supreme Court in *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038 (1973) when the trial court abused its discretion by denying the Petitioner a late endorsement of defense witnesses Jason Varoni, Shawn Spohn and Jamie Richards because a mere CJI2d 5:12 instruction was inadequate to protect Petitioner's right to call and examine witnesses favorable to the defense?

XXV. Was Petitioner denied due process of law in violation of the U.S. Constitution VI, XIV Amendments; Mich. Const. 1963, Article 1 § 20 and the legal principle of the U.S. Supreme Court in *Cupp v. Naughten*, 414 U.S. 141, 94 S. Ct. 396 (1974) when the trial court improperly instructed the jury in regards to the elements of felony firearm in the preliminary and final jury instructions?

XXVI. Was Petitioner's conviction and sentence for delivery-manufacturing marijuana possession with intent to deliver under both Mich. Comp. Laws 333.7401(2)(d)(iii) and Mich. Comp. Laws 333.7401(2)(d)(ii) obtained in violation of the U.S. Constitution VI, XIV Amendments; Mich. Const. 1963, Article 1, §§ 17, 20 and the U.S. Supreme Court's clearly established law in *U.S. v. Russell*, 411 U.S. 423, 93 S. Ct. 1637 (1973) when the conviction and sentence was based on police and law enforcement entrapment when the police agent posed as a Native American to induce MacLeod to violate the Michigan Medical Marijuana law per Mich. Comp. Laws 333.26421 et. seq., resulting in a violation of the Health Code law pursuant to Mich. Comp. Laws 333.7401(2)(d)(ii)(iii) out of sympathy and empathy for a fellow Native American when without such Native American ruse, Petitioner would not have violated Mich. Comp. Laws 333.7401(2)(d)(ii)(iii)?

XXVII. Was Petitioner denied the U.S. Constitution XIV Amendment due process and equal protection of the law clauses during an appeal of right to have accurate and verbatim transcripts of the entire proceedings when the court reporter failed to comply with the language of Mich. Comp. Laws 8.108(B)(1)(A)–(D) consistent with 28 U.S.C. § 753(B)(1) when the court in the form of the 11 illegally admitted hearsay evidence PX1, PX 5, PX 6 and PX 31 where such omissions interferes with the appellate court's ability to make an accurate and independent determination of what the tape disc conversations between MacLeod and CI Shawn Spohn and MacLeod and Officer Varoni actually said or meant?

XXVIII. Was Petitioner denied the effective assistance of appellate counsel during direct appeal in violation of the U.S. Constitution XIV Amendment and the legal principles of the U.S. Supreme Court in

*Anders v. California*, 386 U.S. 738; 87 S. Ct. 1396 (1967) when appellate counsel failed to raise the exact arguments contained in arguments VIII–XXVIII because those issues were significant, meritorious and obvious issues to raise during direct appeal when there is a reasonable likelihood that had arguments I–XX been raised on direct appeal, Defendant MacLeod's conviction, judgment, and sentence would have been reversed?

(ECF No. 1. Petition, PgID 72–81.)

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S.

11

362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. DISCUSSION

#### A. Claims # 1, 5, 6, 7, 8. The jurisdictional claims.

Petitioner, in his first, fifth, sixth, seventh, and eighth claims, argues that the State of Michigan did not have jurisdiction to prosecute him, because his status as a Native American permits petitioner to grow and sell marijuana. Petitioner bases his claims primarily on the 1836 Treaty of Washington, in which various Native American Tribes sold a large portion of land in Michigan to the federal government, a 2007 Consent Decree from the United States District Court for the Western District of Michigan, which permitted Native Americans to hunt, fish, plant, and gather on the former tribal land without state regulation, and the Indian Civil Rights Act of 1968. 25 U.S.C. §§ 1301–1304. The Michigan Court of Appeals rejected the bulk of

petitioner's claims, ruling that the State of Michigan had jurisdiction to prosecute petitioner for his crimes. *MacLeod*, No. 326950, 2016 WL 3767496, at *2.

The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts. *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976); *see also Daniel v. McQuiggin*, 678 F. Supp. 2d 547, 553 (E.D. Mich. 2009). The Sixth Circuit has noted that "[a] state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 F. App'x. 473, 475 (6th Cir. 2001). Petitioner's claims that the trial court lacked jurisdiction to try his case raises an issue of state law because it questions the interpretation of Michigan law, and is therefore not cognizable in federal habeas review. *See United States ex. rel. Holliday v. Sheriff of Du Page Cty.*, 152 F. Supp. 2d 1004, 1013 (N.D. Ill. 2001); *cf. Toler v. McGinnis*, 23 F. App'x. 259, 266 (6th Cir. 2001) (district court lacked authority on habeas review to review petitioner's claim that the state court erred in refusing to instruct jury on the requirements for extraterritorial jurisdiction, because the claim was contingent upon an interpretation of an alleged violation of state law). Petitioner is not entitled to relief on these claims.

### B. Claims # 2, 18, 19, and 20. The Confrontation Clause claims.

Petitioner next alleges that his Sixth Amendment right to confrontation was violated.

Petitioner, in his second claim, alleges that his right to confrontation was violated when the prosecutor failed to produce certain endorsed witnesses for trial, namely, the confidential informants, as well as Detective Varoni.

The Sixth Amendment guarantees a defendant the right to confront witnesses and to have compulsory process for witnesses favorable to him or to her. However, the Sixth Amendment does not require the prosecution to call every witness who is competent to testify. *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992); *Whittaker v. Lafler*, 639 F. Supp. 2d 818, 825 (E.D. Mich. 2009). Further, the right to confrontation does not impose a duty upon the prosecution to call a particular witness. *United States v. Bryant*, 461 F.2d 912, 916 (6th Cir. 1972). Stated differently, the Confrontation Clause "is not a guarantee that the prosecution will call all the witnesses it has against the defendant." *United States v. Morgan*, 757 F.2d 1074, 1076 (10th Cir. 1985). In *Cooper v. California*, 386 U.S. 58, 62, n.2 (1967), the U.S. Supreme Court found a habeas petitioner's contention that he was deprived of his right to confrontation because the state did not produce an informant to testify against him to be "absolutely devoid of merit." *Id.* Therefore, the Sixth Amendment right to confrontation "does not come into play where a potential witness neither testifies nor provides evidence at trial." *United States v. Porter*, 764 F.2d 1, 9 (1st Cir. 1985) (internal citations omitted).

Federal law does not require the production of *res gestae* witnesses. *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). Michigan law's requirement that the prosecutors produce *res gestae* witnesses is a matter of state law, and enforcement of this requirement is beyond the scope of federal habeas review. *Collier v. Lafler*, 419 F. App'x. 555, 559 (6th Cir. 2011). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F.2d 192 (unpublished table decision) (6th Cir. Aug. 24, 1988) (citing *Bryant*, 461 F.2d at 916). Thus, whether a prosecutor exercised due diligence in attempting to locate a *res gestae* witness is outside the scope of federal habeas review. *Collier*, 419 F. App'x. at 560. Petitioner presented no evidence that the confidential informants or Detective Varoni would have offered exculpatory evidence had they testified; he is not entitled to habeas relief.

As a related claim, petitioner contends that his right to confrontation was violated by the admission of one of the confidential informant's out-of-court statements to the police that he had purchased marijuana from petitioner. The Michigan Court of Appeals rejected the claim:

> Our review of the record shows that the detective who supervised two of the controlled buys testified that Spohn said he could purchase marijuana from defendant, and that defendant had a green pickup truck. Although such statements by a confidential informant to a police officer are testimonial, the record clearly shows that the statements were not offered to establish the truth of the matter stated, but to show why the

15

police acted as they did. Specifically, they explained why officers set up controlled buys targeting defendant and that they used the information about defendant's truck to help locate the grow operation. Statements offered to show why police officers acted as they did are not hearsay. Spohn and his girlfriend did not testify against defendant at trial, and Spohn's testimonial statements were offered by the detective to show why police acted as they did. Defendant fails to establish a violation of the Confrontation Clause.

*MacLeod*, No. 326950, 2016 WL 3767496, at *5 (internal citations omitted).

Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington*, 541 U.S. 36, 68–69 (2004). However, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* at 59, n.9; *see also Tennessee v. Street*, 471 U.S. 409, 414 (1985) (defendant's rights under the Confrontation Clause were not violated by introduction of an accomplice's confession for the nonhearsay purpose of rebutting defendant's testimony that his own confession was coercively derived from the accomplice's statement). Indeed, "[i]n some circumstances, out of court statements offered for the limited purpose of explaining why a government investigation was undertaken have been determined not to be hearsay." *United States v. Gibbs*, 506 F.3d 479, 486–87 (6th Cir. 2007) (quoting *United States v. Martin*, 897 F.2d 1368, 1371 (6th Cir. 1990)). Evidence that is provided merely by way of

background or is offered only to explain how certain events came to pass or why law enforcement officers took the actions that they did is not offered for the truth of the matter asserted, and thus cannot trigger a Confrontation Clause violation. *United States v. Warman*, 578 F.3d 320, 346 (6th Cir. 2009) (quoting *United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004)).

In the present case, the admission of the confidential informant's statements to the detective did not violate petitioner's right to confrontation because they were not offered for the truth of the matter asserted but rather were simply offered to the jury as background about the investigation that led to the arrest of petitioner and the search of his property. *E.g.*, *United States v. Doxey*, 833 F.3d 692, 708 (6th Cir. 2016) (finding that informant's statements about background leading to search were not offered for truth asserted). Morever, because the Mr. Spohn did not testify at trial, petitioner did not have a right to confront and impeach him at trial. *Id.* Thus, this Court rejects petitioner's second claim and his related nineteenth claim involving his inability to impeach Mr. Spohn.

Petitioner, in his eighteenth claim, alleges that his right to confrontation was violated when Detective Patrick Holt was permitted to testify concerning the statement that petitioner made to Detective Jason Varoni, rather than having Detective Varoni testify.

Petitioner's statements to the police are not testimonial hearsay, because they are admissions by a party-opponent. These statements are, by definition, not hearsay under either Federal Rule of Evidence 801(d)(2)(A) or Michigan Rule of Evidence 801(d)(2)(A). Because the prohibition announced in *Crawford* only applies to hearsay, that prohibition does not cover petitioner's own admissions to the police. *See United States v. Tolliver*, 454 F.3d 660, 665 (7th Cir. 2006); *see also Miller v. Stovall*, 573 F. Supp. 2d 964, 997 (E.D. Mich. 2008). Petitioner is not entitled to relief on his eighteenth claim.

Petitioner, in his twentieth claim, alleges that his Sixth Amendment rights were violated when Michigan State Police Forensic Scientist Karen Brooks was permitted to testify about a laboratory report that she did not prepare.

Scientific or laboratory reports which are admitted to prove a fact are testimonial statements for the purposes of the Sixth Amendment right to confrontation. *Bullcoming v. New Mexico*, 564 U.S. 647, 665 (2011); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310–11 (2009). Because they are testimonial, the reports cannot be admitted into evidence unless the analysts who wrote them are subject to cross-examination. *Melendez-Diaz*, 557 U.S. at 311.

Michigan State Police Forensic Scientist Karen Brooks, the testifying witness, did generate the report at issue, which was admitted as People's Exhibit 8. (ECF No.

18

14-10, PgID 1413.) That report plainly lists Karen Brooks' name and bears her signature at the end of the report. Petitioner's claim is without merit.

Petitioner also claims that the prosecutor violated its duty under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to turn this report over to the defense prior to trial.

It is true that suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady*, 373 U.S. at 87. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985). A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999), the Supreme Court articulated three essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002).

19

Petitioner is not entitled to habeas relief because he failed to show that any of the suppressed material was exculpatory. A habeas petitioner bears the burden of showing the prosecution suppressed exculpatory evidence. *See Bell v. Howes*, 703 F.3d 848, 853 (6th Cir. 2012). Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *Burns v. Lafler*, 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004). "[M]ere speculation that a government file may contain *Brady* material is not sufficient" to prove a due-process violation. *United States v. Driscoll*, 970 F.2d 1472, 1482 (6th Cir.1992), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir.1999). Petitioner has failed to show that any of this evidence exculpated him of this crime. Petitioner is therefore not entitled to habeas relief on his *Brady* claim. *Burns*, 328 F. Supp. 2d at 724.

Petitioner's *Brady* claim also fails because the laboratory report was disclosed to petitioner during trial. *Brady* generally does not apply to the delayed disclosure of exculpatory information, but only to a complete failure by the prosecutor to disclose such information. *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (internal citations omitted). If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant is prejudiced by its nondisclosure. *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986); *see also United States v. Bencs*, 28 F.3d 555, 560–61 (6th Cir. 1994). The Sixth Circuit noted that "[t]he Supreme Court rejected the claim that the duty to disclose hinges on the

usefulness of the material to pretrial preparation. Such a standard would 'necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense.'" *Bencs*, 28 F.3d at 560, n.5 (quoting *United States v. Agurs*, 427 U.S. 97, 112, n.20 (1976)).

Petitioner is not entitled to relief on his twentieth claim.

### C. Claims # 3, 22, and 24. The right to present a defense claims.

Petitioner alleges he was denied his right to present a defense.

"Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense." *Washington v. Texas*, 388 U.S. 14, 19 (1967). This right is a fundamental element of the due process of law. *Id.*; *see also Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'") (internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has acknowledged its "traditional

21

reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane*, 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *Cf. Rockwell v. Yukins*, 341 F.3d 507, 511–12 (6th Cir. 2003).

Petitioner, in his third claim, alleges he was denied the right to present a defense because the trial judge refused to allow him to bring up his Native American background. The Michigan Court of Appeals rejected the claim:

> Defendant argues that, because the conduct for which he was criminally charged accorded with the jurisdictional rights afforded him under the aforementioned Decree, his Native American heritage was an essential element in his defense. Defendant asserted and proved his Native American heritage in the context of the jurisdictional challenge; however, once the trial court properly exercised jurisdiction over the matter, defendant's Native American heritage could provide him neither immunity nor defense under the MMMA. Therefore, his heritage was neither relevant nor material. Consequently, defendant did not suffer a constitutional deprivation of his right to present a defense,

22

> and the trial court did not abuse its discretion by granting the prosecution's motion in limine to prohibit defendant's mention of his heritage.

*MacLeod*, No. 326950, 2016 WL 3767496, at *6 (internal citation omitted).

The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, upon which federal habeas review is not available. *See Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002). Likewise, "[d]ue process does not require that a defendant be permitted to present any defense he chooses. Rather, states are allowed to define the elements of, and defenses to, state crimes." *Lakin v. Stine*, 80 F. App'x. 368, 373 (6th Cir. 2003) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 48487 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 84–86, (1986)). The circumstances under which a criminal defense may be asserted is thus a question of state law. *Id.*

The Michigan Court of Appeals determined that petitioner's Native American heritage did not provide a defense to the crimes. This Court must defer to that determination.

23

Petitioner, in his twenty-second claim, alleges that he should have been permitted to introduce evidence that Mr. Spohn lied about being Native American, as it was relevant to an entrapment defense.

Petitioner is not entitled to relief on this claim for several reasons.

First, in Michigan, the defense of entrapment is decided by the judge, not the jury. *See People v. D'Angelo*, 401 Mich. 167, 173–77 (1977); *see also People v. Woods*, 241 Mich. App. 545, 554 (2000). Petitioner did not assert an entrapment defense either before or at trial. In any event, the jury would not have decided any entrapment issue, hence, the judge's refusal to allow petitioner to introduce evidence that Spohn had lied about his heritage would not have deprived petitioner of a defense.

Secondly, petitioner presented no evidence that he was entrapped by Spohn into committing a crime.

Michigan has adopted the objective theory of entrapment. *See People v. Juillet*, 439 Mich. 34, 52–54 (1991). Under an objective theory of entrapment, "entrapment occurs when the government induces or instigates the commission of a crime by one not ready and willing to commit it, rather than merely providing the opportunity to commit a crime." *Sosa v. Jones*, 389 F.3d 644, 647 (6th Cir. 2004) (citing *Russell*, 411 U.S. at 445).

Spohn's represented heritage did not induce petitioner into committing a crime he otherwise would not have because, regardless of his background, Spohn was not one of petitioner's medical marijuana patients, the only people to whom MacLeod was allowed to sell or provide marijuana, and yet petitioner admitted to selling to non-patients anyway. (ECF No. 14-11, playing 10/14/14 Interview Audio, admitted as People's Exhibit 31, PgID 1467.) The sale of marijuana to non-patients was the crime, which had nothing to do with Spohn's heritage. *See People v. Bylsma*, 315 Mich. App. 363, 384 (2016) (holding that a defendant may not assert a defense under Section 8 of the Michigan Medical Marijuana Act for sale or transfer of marijuana "to a patient whom he did not serve as a *primary* caregiver") (emphasis in original). Petitioner is not entitled to relief on his twenty-second claim.

Petitioner's twenty-fourth claim, in its heading, states that the judge prevented the defense from calling Mr. Spohn, Detective Varoni, or Ms. Richards as defense witnesses. However, the body of his argument is basically a rehash of the argument he made in his second claim, namely, that his rights were violated by the prosecution's failure to call these witnesses to testify. However, as mentioned when addressing petitioner's second claim, *supra*, the Confrontation Clause does not require the prosecution to call all of its witnesses. Petitioner failed to show that these witnesses would have been exculpatory. He is not entitled to relief on his twenty-fourth claim.

### D. Claims # 4 and 16. The ineffective assistance of trial counsel claims.

Petitioner next alleges he was denied the effective assistance of trial counsel.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner first contends that trial counsel was ineffective for filing a procedurally defective interlocutory appeal after the judge denied petitioner's motion to dismiss and granted the prosecution's motion in limine to exclude all references to petitioner's Native American heritage.

Petitioner is unable to show that he was prejudiced by trial counsel's failure to file an interlocutory appeal in a correct manner because the Michigan Court of Appeals eventually addressed the claims that the petitioner wished to raise in an interlocutory appeal on his appeal of right and found them to be meritless. Because the petitioner failed to show that trial counsel was ineffective for failing to file an interlocutory appeal, he is not entitled to habeas relief. *E.g.*, *McKenzie v. Jones,* 100 F. App'x. 362, 363–64 (6th Cir. 2004).

Petitioner next contends that trial counsel was ineffective for filing an untimely notice to remove petitioner's criminal case to the federal court. The Michigan Court of Appeals rejected this claim, because petitioner failed to show that he had substantive grounds for removal to federal court under 28 U.S.C. §§ 1442, 1442a, and 1443. *MacLeod*, No. 326950, 2016 WL 3767496, at *6.

A criminal prosecution may be removed from state to federal court where the defendant is the United States or any of its officers or agents, an officer of a federal court, or an officer of either House of Congress, a member of the armed forces who acted "under color of his office or status," or a defendant who is denied or cannot enforce his civil rights or equal rights in the state court. 28 U.S.C. §§ 1442, 1442a, 1443.

Petitioner is unable to show that his case fell within one of these statutory provisions for removal of a state court criminal action to the federal court. Petitioner's request for removal to the federal court was denied not just on procedural grounds but also on the ground that petitioner failed to show that his case was removable to federal court. *People of the State of Michigan v. Dustin Lee Macleod,* 15-cv-10614 (E.D. Mich. Feb. 19, 2015) (ECF No. 3, PgID 63.) Petitioner failed to show that he was prejudiced by counsel's failure to file a timely notice of removal.

Petitioner next claims that trial counsel was ineffective for failing to raise certain Fourth Amendment challenges to the evidence.

To prove that counsel's failure to litigate a Fourth Amendment claim competently is the principal claim of ineffectiveness, a defendant "must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

Petitioner first argues that trial counsel was ineffective for failing to challenge the initial police stop of petitioner on the ground that the stop was made to detain petitioner while a search warrant was executed on his house. The Michigan Court of Appeals rejected petitioner's claim:

> Defendant correctly notes that the United States Supreme Court has held that the *Summers* rule permitting law enforcement officers to detain the occupants of premises being searched is limited to occupants found within the immediate vicinity of the premises. *Bailey v. US*, —— U.S. ——; 133 S Ct 1031; 185 L.Ed.2d 19 (2013); *Michigan v. Summers*, 452 U.S. 692, 101 S Ct 2587, 69 L Ed 340 (1981). However, any challenge of the initial stop based on the *Summers/Bailey* rule would have been futile because it pertains to detention of an occupant without an initial showing of probable cause that the occupant had committed a crime. *Summers*, 452 U.S. at 693–695. In the instant case, officers had probable cause to detain and arrest defendant for selling marijuana to a confidential informant in three controlled buys. Defense counsel is not ineffective for failing to follow a futile course of action.

*MacLeod*, No. 326950, 2016 WL 3767496, at 7.

28

The police had probable cause to detain and arrest petitioner for selling marijuana to a confidential informant. Petitioner would have been unable to avail himself of the *Bailey/Summers* rule to suppress the evidence, accordingly, the Michigan Court of Appeals reasonably rejected petitioner's claim.

Petitioner next contends that trial counsel failed to challenge the search warrants on the ground that they were not supported by probable cause. The Michigan Court of Appeals rejected this claim:

> In the instant case, the search warrant affidavit relayed several statements made by defendant during three undisputed controlled buys. The statements were not reported by the CIs, but were captured by the audio recorder/transmitter worn by the CI. Defendant commented on the different strains of marijuana he grew, how much he had spent on his marijuana business, what type of marijuana sells well, and the proximity of his grow house to his residence, and he asked one of the CI's "if he could sell a couple of ounces for him to help keep his yield down." The search warrant affidavit also relayed information about defendant's criminal history, and results of a comparative analysis of previously subpoenaed electrical records from similar buildings in the area of defendant's grow house. Considering the totality of the affidavit and mindful of our deference to a magistrate's probable cause determination, we find that the search warrant affidavit provided a "'substantial basis' for inferring a 'fair probability' that contraband or evidence of a crime will be found in a particular place[,]". Consequently, the defendant's argument that the search warrant was devoid of probable cause fails, as does his contention that trial counsel performed deficiently by failing to challenge it.

*MacLeod*, No. 326950, 2016 WL 3767496, at *7 (internal citations omitted).

The search warrant affidavit contained sufficient evidence to establish probable cause for the search. The Michigan Court of Appeals reasonably rejected

petitioner's ineffective assistance of counsel claim because petitioner failed to show that trial counsel could have successfully challenged the search warrant had he filed a motion to suppress.

Petitioner next contends that trial counsel was ineffective for failing to assert two defenses that are available under the Michigan Medical Marihuana Act or MMMA.

The Michigan Court of Appeals rejected petitioner's claim at length:

Defendant next contends that defense counsel rendered ineffective assistance when he failed to assert defenses available under the MMMA, specifically, an affirmative defense under § 8, MCL 333.26428, and an immunity defense under § 4, MCL 333. 26424.

Defendant was charged with manufacturing with intent to deliver between 5 and 45 grams of marijuana, and possession of 20–200 plants with intent to deliver. In order to prevail on a pretrial § 8 defense, defendant had to provide evidence that his physician recommended the medical use of marijuana to treat serious or debilitating medical conditions subsequent to a full medical assessment that occurred in the context of a bona-fide physician-patient relationship. MCL 333.26428(a)(1). In addition, the defendant had to show that the one to two pounds of marijuana and 122 marijuana plants he possessed was "not more than reasonably necessary" for his treatment. ML 333.26428(a)(2). Further, defendant had to prove that he was engaged in the medical use of marijuana to treat or alleviate his serious or debilitating medical condition. MCL 333.26428(a)(3). If defendant satisfied all of these elements, he could assert a § 8 defense in a motion to dismiss and, following an evidentiary hearing where defendant met the elements set forth above, the relevant charges would have been dismissed. MCL 333.26428(b).

Defendant does not indicate on appeal how he would have met the requirements of § 8. With the possible exception of his mother, nothing suggests that defendant could have provided prima facie evidence

establishing that he, his other three registered patients, his regulars, whom he declined to identify, or any of his random buyers satisfied the requirements of § 8(a)(1). Even if he could have satisfied § 8(a)(1), that he had product enough to provide for his regulars while also supplying the unpredictable needs of random buyers renders it unlikely that he could have presented prima facie evidence satisfying § 8(a)(2). In light of defendant's admissions and the amount of marijuana seized, there appears no reasonable probability that the result of the proceedings would have been different had defense counsel moved to dismiss under § 8.

Likewise, there is no reasonable probability that defendant would have been able to assert a successful § 4 defense, which required, among other things, that defendant not possess more than 2.5 ounces of marijuana and 12 plants for each qualifying patient. MCL 333.26424(b)(1). Defendant argues that, if defense counsel had challenged inclusion of the "clones" in the total plant count, the count would have been reduced to 30 plants, which fell within the amount he was allowed to have under § 4. However, even if the clones had been excluded, defendant admittedly had one to two pounds of marijuana in his residence, which exceeded the 10 ounces he was allowed under § 4.

Further, the marijuana plants had to be kept in an "enclosed, locked facility." 333.26424(b)(2). An "enclosed locked facility" means "a closet, room, or other comparable, stationary, and fully enclosed area equipped with secured locks or other functioning security devices that permit access only by a registered primary caregiver or registered qualifying patient." MCL 333.26423(d). Defendant told Detective Varoni that his father had a key to the grow operation, but that his father did not grow, smoke, or even touch marijuana. Clearly, defendant's father was not a proper "registered primary caregiver" or "registered qualifying patient" entitled to have a key to the "enclosed, locked facility" under MCL 333.26423(d). Because defendant possessed in excess of the 10 ounces of usable marijuana allowed him under § 4, and because there is no evidence that his father's access to the grow facility was in accordance with MCL 333.26423(d), immunity under § 4 was not available to defendant. Consequently, defense counsel did not render ineffective assistance for failing to advocate a meritless position.

*MacLeod*, No. 326950, 2016 WL 3767496, at *8 (internal citations omitted).

Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a timely manner. *Fornash v. Marshall*, 686 F.2d 1179, 1187 (6th Cir. 1982). The right to the effective assistance of counsel is violated where, through his or her own ineffectiveness or incompetence, defense counsel deprives a criminal defendant of a substantial defense. *Williams v. Abshire*, 544 F. Supp. 315, 318 (E.D. Mich. 1982). The Supreme Court, however, "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." *Knowles*, 556 U.S. at 123.

For the reasons stated by the Michigan Court of Appeals in its opinion, petitioner failed to offer any evidence that he had a viable affirmative defense or immunity defense under Michigan's medical marijuana law. Accordingly, the Michigan Court of Appeals reasonably rejected these claims.

Petitioner next alleges that his trial counsel was ineffective for failing to move to dismiss his sister Megan MacLeod's felony arrest warrant on the ground that she was on medical furlough from the jail. The Michigan Court of Appeals rejected this claim:

> Defendant fails to support his contention that defense counsel performed deficiently by, as the prosecution puts it in his brief to this Court, "failing to take on a separate client and secure a favorable outcome for her." Further, although Megan MacLeod had been on medical furlough, she had remained at large for 10 months after the date

ordered for her return to the Cheboygan County Jail. Thus, defendant's claim is without merit.

*MacLeod*, No. 326950, 2016 WL 3767496, at *9.

Failing to file a frivolous motion to dismiss does not constitute ineffective assistance of counsel. *Goldsby v. United States*, 152 F. App'x. 431, 438 (6th Cir. 2005). Petitioner failed to show that counsel had a legitimate basis to bring a motion to dismiss the charge against Ms. Macleod or even standing to bring such a motion on behalf of someone who was not his client. Counsel was thus not ineffective for failing to bring such a motion.

Petitioner next alleges that defense counsel was ineffective for failing to object to the prosecution's introduction into evidence of the audio recordings of the controlled buys on the ground that the recordings constituted 404(b) evidence admitted to show petitioner's propensity to make such sales. The Michigan Court of Appeals rejected this claim, finding that this evidence was admissible under M.R.E. 404(b). *MacLeod*, No. 326950, 2016 WL 3767496, at *9–10.

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Because the Michigan Court of Appeals determined that the audio recordings were admissible under M.R.E. 404(b), this Court must defer to that determination in resolving petitioner's ineffective assistance of counsel claim. *E.g.*,

*Brooks v. Anderson*, 292 F. App'x. 431, 437–38 (6th Cir. 2008). Because this Court "cannot logically grant the writ based on ineffective assistance of counsel without determining that the state court erred in its interpretation of its own law," this Court is constrained to reject this ineffective assistance of trial counsel claim. *Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005).

Petitioner next argues that trial counsel was ineffective for failing to call Mr. Spohn, his girlfriend, and Detective Varoni as defense witnesses.

The Michigan Court of Appeals rejected petitioner's claim:

> Defendant asserts that, if defense counsel "had done his investigation up front and his own subpoenas a different result would have been reasonably probable." Defendant provides no rationale for this assertion, nor any indication of how the result of the proceeding would have differed had defense counsel subpoenaed the CIs and Detective Varoni. Defendant received a missing-witness instruction for Spohn, informing the jury that it could infer that his testimony would have been harmful to the prosecution, and it is not clear what information Detective Varoni could provide, other than substantiation of defendant's admissions. Therefore, given the nature of the evidence and the failure of defendant to explain how their testimony would have affected the outcome of the trial, defendant has failed to establish that he was prejudiced by defense counsel's failure to subpoena these witnesses.

*MacLeod*, No. 326950, 2016 WL 3767496, at *10.

Petitioner failed to provide any affidavits from these witnesses in his appeal of right or post-conviction motion with the state courts, nor has he provided this Court with any affidavits from these witnesses concerning their proposed testimony and willingness to testify on the petitioner's behalf. Conclusory allegations of

34

ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Petitioner has failed to attach any offer of proof or any affidavits sworn by the proposed witnesses. In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *E.g.*, *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).

Finally, counsel did obtain a missing witness instruction from the court, instructing the jurors that Spohn's testimony would have been harmful to the prosecution. Trial counsel's decision to capitalize on Spohn's absence, rather than to request the production of this witness, was a matter of reasonable trial strategy that defeats petitioner's claim. *E.g.*, *Collier*, 419 F. App'x at 560–61. Petitioner is not entitled to habeas relief on his fourth claim.

In his sixteenth claim, petitioner alleges twenty-one additional ineffective assistance of trial counsel claims that he raised in his post-conviction motion. Some of these claims appear to be a rehash of the claims raised in petitioner's fourth claim.

Petitioner first argues that trial counsel was ineffective for failing to file a motion to quash the information on the harboring a fugitive charge. Petitioner again argues that he could not be charged with harboring a fugitive because his sister was on medical furlough from the jail. The Michigan Court of Appeals rejected a similar

claim on petitioner's direct appeal, finding that counsel was not ineffective for failing to file a motion to dismiss on Ms. Macleod's behalf because she remained at large for ten months from the county jail. *MacLeod*, No. 326950, 2016 WL 3767496, at *9. In this case, there was sufficient evidence presented at the preliminary examination to support a harboring a felon charge. Accordingly, petitioner is unable to show that counsel was ineffective for failing to file a motion to quash the information. *E.g.*, *Dell v. Straub*, 194 F. Supp. 2d 629, 649 (E.D. Mich. 2002).

Petitioner next claims that trial counsel was ineffective for failing to request a *Franks* hearing to challenge the veracity of the affiant's affidavit to the search warrant. Petitioner claims that the search warrant was fatally defective because the affidavit in support of the warrant omitted the fact that petitioner was a Medical Marihuana Primary Caregiver under Michigan law.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the United States Supreme Court held that an affidavit of probable cause in support of a request for a search warrant that is valid on its face may be challenged by a defendant if it can be shown that (1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause. *Id.* at 171–72.

In the present case, even if the detective had included information in the affidavit that petitioner was licensed to sell medical marijuana, there was still

36

sufficient evidence to support the issuance of a search warrant in this case. The affidavit indicated that petitioner had sold marijuana to non-patients, which itself would be a violation of Michigan law. (ECF No. 5-1, PgID 760–61.) Because there was sufficient information to support the issuance of a search warrant, counsel was not ineffective in failing to conduct a *Franks* hearing or to otherwise investigate for such a hearing. *E.g.*, *Fudge v. United States*, 673 F. Supp. 2d 568, 576–77 (W.D. Mich. 2009).

Petitioner next contends that trial counsel was ineffective for failing to move to suppress the search warrant on the ground that the magistrate lacked jurisdiction to issue a search warrant in Indian country. Petitioner presented no evidence that his property was located in Indian country, hence, counsel was not ineffective for failing to move to challenge the search warrant on the basis.

Petitioner next contends that counsel was ineffective for failing to file a motion to dismiss based on police misconduct. Petitioner does not indicate what misconduct the police engaged in. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman*, 178 F.3d at 771. Petitioner's claim is conclusory and unsupported.

Petitioner next contends that trial counsel was ineffective for failing to file an entrapment motion. When addressing petitioner's right to present a defense claim, *supra,* this Court noted that petitioner presented no evidence that he had a valid

entrapment defense. Trial counsel's decision not to pursue an entrapment defense was not deficient or prejudicial since such a defense was unlikely to succeed. *E.g.*, *Mayes v. United States*, 93 F. Supp. 2d 882, 891 (E.D. Tenn. 2000).

Petitioner next contends that trial counsel was ineffective for failing to move for a mistrial after Juror Tricia St. Pierre returned to the jury room during *voir dire* with the other jurors but before she was peremptorily challenged by the defense. Petitioner claims that this ran the risk of Ms. St. Pierre sharing extra-judicial facts with the other jurors concerning her knowledge of petitioner. Petitioner presented no evidence to the state courts or this Court that Ms. St. Pierre discussed any extra-judicial facts with the other jurors. Counsel's failure to make a frivolous motion for mistrial does not amount to the ineffective assistance of counsel. *E.g.*, *Rockwell v. Palmer,* 559 F. Supp. 2d 817, 834 (W.D. Mich. 2008).

Petitioner next contends that trial counsel should have moved to sever the felon in possession charge from the other charges, on the ground that the jurors would be unduly prejudiced into convicting him once they heard that he had a prior conviction.

"Under Michigan law, severance is required only when a defendant shows that it is necessary to avoid prejudice to his substantial rights." *Clark v. McLemore*, 291 F. Supp. 2d 535, 545 (E.D. Mich. 2003) (citing M.C.R. 6.121(C)). Under M.C.R. 6.120(B), a court must sever offenses that are not related as defined in MCR

38

6.120(B). MCR 6.120(B) defines related offenses that are those "based on (a) the same conduct, or (b) a series of connected acts, or (c) a series of acts constituting part of a single scheme or plan."

Petitioner's felon in possession of a firearm charge arose from the same conduct or acts as the other charges, hence, there was no basis under Michigan law to move for severance of the charges. Petitioner has presented no case authority to establish that he would have been entitled to a separate trial on his felon in possession of a firearm charge and is thus not entitled to his claim of ineffective assistance of counsel based on counsel's failure to file a motion to sever the felon in possession charge. *E.g.*, *Mattox v. Davis*, 549 F. Supp. 2d 877, 932 (W.D. Mich. 2008).

Petitioner next contends that trial counsel was ineffective for failing to move for an expert to challenge Detective Halleck's opinion about the 92 clones and their root systems and height and to whether they qualified as plants under Michigan's drug laws.

A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006). Petitioner presented this Court with no evidence that he has an expert who would impeach Detective Halleck's testimony about the clones and is thus not entitled to relief on his ineffective assistance of counsel claim.

Petitioner next claims that trial counsel was ineffective for failing to request a continuance to secure the presence of Mr. Spohn, Detective Varoni, Ms. Richards, or Joe Medicine to testify for the defense. This Court has already rejected petitioner's related Confrontation Clause claim on the ground that petitioner failed to show that any of these witnesses would offer exculpatory testimony. Petitioner was not prejudiced by his trial counsel's failure to request a continuance absent any showing regarding how additional preparation time would have aided petitioner's case. *See Bacon v. Klee*, No. 15-2491, 2016 WL 7009108, at *5 (6th Cir. Nov. 30, 2016).

Petitioner next contends that trial counsel was ineffective for failing to move for a directed verdict on the felony-firearm and harboring a fugitive charges. As will be discussed when addressing petitioner's sufficiency of evidence claims, *infra,* sufficient evidence supported the verdict. Counsel's failure to move for a directed verdict did not amount to ineffective assistance of counsel. *Maupin v. Smith*, 785 F.2d 135, 140 (6th Cir. 1986); *see also Hurley v. United States*, 10 F. App'x. 257, 261 (6th Cir. 2001).

Petitioner next claims that trial counsel was ineffective for failing to move for the trial judge to recuse himself on the basis of the fact that he exhibited racial prejudice against Native Americans. Petitioner presented no evidence to support his claim that the trial judge displayed racial bias. Because petitioner has failed to show that the judge was biased against him, counsel was not ineffective for failing to

40

move for the judge to be disqualified. *E.g.*, *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

Petitioner next claims that trial counsel was ineffective for failing to offer evidence that the various treaties and consent agreements between the United States Government and the Native American tribes allowed petitioner to possess a firearm, even if he was a convicted felon. Petitioner offers no caselaw in support of this claim and the Michigan courts had already determined that the State of Michigan had the right to prosecute petitioner and that his Native American status did not provide a defense to these charges.

Petitioner also claims that trial counsel failed to challenge the felon in possession charge on the ground that more than five years had elapsed since petitioner's last incarceration, thus, restoring petitioner's right to carry a firearm.

The elements of felon in possession of a firearm in Michigan are: (1) the defendant was convicted of a felony, (2) the defendant possessed a firearm, and (3) at the time of possession, less than three or five years, depending on the underlying felony, has passed since the defendant had completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007) (citing Mich. Comp. Laws § 750.224f). Petitioner presented no evidence to this Court that he had completed his term of incarceration, satisfied all conditions of probation or parole, or paid all his fines so as to have his

41

civil rights reinstated under Michigan law, so as to allow him to carry a firearm. Petitioner therefore failed to show that counsel was ineffective for failing to challenge the felon in possession charge on this basis.

Petitioner next contends that trial counsel was ineffective for failing to object to the prosecutorial misconduct that he alleges in his thirteenth and seventeenth claims. As the Court will discuss, *infra*, petitioner failed to show that the prosecutor committed misconduct. To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001). Because the prosecutor did not commit misconduct, petitioner is unable to establish that he was prejudiced by counsel's failure to object. *Slagle v. Bagley*, 457 F.3d 501, 528 (6th Cir. 2006).

Petitioner next contends that trial counsel was ineffective for failing to object to the jury empanelment process, which he claims has led to an underrepresentation of racial minorities on Cheboygan County juries. As discussed when addressing petitioner's systematic exclusion claim, *infra*, petitioner failed to show that racial minorities, particularly Native Americans, are being systematically excluded from Cheboygan County juries. Because petitioner failed to show that racial minorities

were being systematically excluded from Cheboygan County juries, defense counsel was not ineffective for failing to object to the jury panel or the jury selection system. *E.g.*, *Greene v. Lafler*, 447 F. Supp. 2d 780, 796 (E.D. Mich. 2006).

Petitioner next contends that trial counsel was ineffective for failing to object to the admission of the audiotape recordings of the undercover purchases of the marijuana, because they were hearsay evidence.

This Court already determined that admission of the tape recordings did not violate petitioner's right to confrontation because they were offered not for the truth of the matter asserted, but for the non-hearsay purpose of establishing why the police acted the way they did. Because the audiotape recordings were admitted for a non-hearsay purpose, trial counsel was not ineffective for failing to object to their admission. *E.g.*, *Flood v. Phillips*, 90 F. App'x. 108, 119 (6th Cir. 2004).

Petitioner next contends that trial counsel was ineffective for failing to object to what he alleges are erroneous jury instructions regarding the felony-firearm charge. As will be discussed when addressing petitioner's instructional error claim, *infra*, the felony-firearm instruction correctly reflected Michigan law. "An attorney's failure to object to jury instructions is deficient only if the petitioner can establish that the instructions were inaccurate." *Daniels v. Lafler*, 501 F.3d 735, 743 (6th Cir. 2007). Defense counsel was not deficient for failing to object to the

instruction given on the elements of felony-firearm, because the instruction was an accurate reflection of the law. *Id.*

Petitioner next contends that trial counsel was ineffective for failing to object to the trial court's alleged lack of jurisdiction.

The Michigan Court of Appeals fully evaluated petitioner's jurisdictional claims on his direct appeal and determined that they had no merit. Petitioner was not prejudiced by any alleged failure on trial counsel's part to object to the alleged jurisdictional defect in this case. *E.g.*, *Wright v. Angelone*, 151 F.3d 151, 161 (4th Cir. 1998).

Petitioner next contends that trial counsel was ineffective for failing to object to the sentencing guidelines.

A right to the effective assistance of counsel exists during sentencing in both noncapital and capital cases. *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). Although sentencing does not involve a criminal defendant's guilt or innocence, "ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.'" *Id.* (quoting *Glover v. United States*, 531 U.S. 198, 203 (2001)).

Petitioner raised this claim on post-conviction review, which was rejected by the state trial and appellate courts. State courts are the final arbiters of state law. *See Bradshaw v. Richey*, 546 U.S. at 76. Because this Court "cannot logically grant the

44

writ based on ineffective assistance of counsel without determining that the state court erred in its interpretation of its own law," this Court must reject this ineffective assistance of trial counsel claim. *Davis v. Straub*, 430 F.3d at 291. In this case, the trial judge and the Michigan appellate courts rejected petitioner's sentencing guidelines claim. Petitioner is therefore unable to show that he was prejudiced by his trial counsel's purported ineffectiveness in failing to challenge the scoring of the sentencing guidelines. *E.g.*, *Coleman v. Curtin*, 425 F. App'x. 483, 484–85 (6th Cir. 2011).

Petitioner next contends that trial counsel was ineffective for conceding petitioner's guilt on some charges in his opening statement. Petitioner argues that this is tantamount to the constructive denial of counsel, which should lead to automatic reversal of his conviction.

The Supreme Court has held that a defense counsel's failure to obtain a criminal defendant's express consent to a strategy of conceding guilt at the guilt phase of a capital trial does not automatically render counsel's performance deficient. *Florida v. Nixon*, 543 U.S. 175, 192 (2004). The Supreme Court has also explained that the *Strickland* standard governs the analysis of a trial counsel's strategic decision to concede guilt, and not the presumed prejudice standard found in *United States v. Cronic*, 466 U.S. 648 (1984). *Nixon,* 543 U.S. at 189–92.

Petitioner's claim is without merit. There is no evidence that petitioner's counsel clearly conceded petitioner's guilt as to any of the charges. Petitioner's counsel merely mentioned that some elements, such as the fact that the charged offenses occurred in Cheboygan County, would not be in dispute. Defense counsel did go on to argue that the prosecutor had the entire burden of proof and that the jurors at the end of the case would be struggling with the issues regarding the elements of the crimes. (ECF No. 14-9, PgID 1199–1201.) When the statements are viewed in the context that they were made, counsel never conceded guilt with respect to any charge. *E.g.*, *Poindexter v. Mitchell*, 454 F.3d 564, 581–82 (6th Cir. 2006).

Petitioner next claims, without any support, that his counsel did not know the law. Petitioner's claim is conclusory, thus, he is not entitled to relief.

Petitioner finally claims that trial counsel was ineffective for failing to present evidence that petitioner as a primary caregiver was entitled to compensation for costs under Michigan's medical marijuana law. As has been discussed several times, petitioner's acts were not permissible under Michigan's medical marijuana law. Counsel was not ineffective for failing to present such evidence. Petitioner is not entitled to relief on his sixteenth claim.

### E. Claim # 9. The untimely habitual offender notice claim.

Petitioner asks this Court to vacate his habitual offender conviction because the habitual offender notice was untimely filed.

46

Petitioner's claim involving the application of Michigan's habitual offender laws is non-cognizable on habeas review, because it involves an application of state law. *See Rodriguez v. Jones*, 625 F. Supp. 2d 552, 569 (E.D. Mich. 2009); *Grays v. Lafler*, 618 F. Supp. 2d 736, 751 (W.D. Mich. 2008). Petitioner's claim that he received inadequate notice of the habitual offender charge under Michigan law thus does not state a claim that is cognizable in federal habeas review. *See Tolbert v. LeCureaux*, 811 F. Supp. 1237, 1240–41 (E.D. Mich. 1993). Due process does not require advance notice that a trial on a substantive criminal charge will be followed by an habitual offender charge. Due process only requires that a defendant be given a reasonable notice and opportunity to be heard relative to the habitual offender charge. *Oyler v. Boles*, 368 U.S. 448, 452 (1962).

Petitioner did not dispute, either at his sentencing, or more importantly, in his habeas petition, that he had prior convictions that would make him eligible to be sentenced as an habitual offender, nor did he object or seek a continuance based on the absence of advance notice of the sentence enhancement. Therefore, petitioner cannot complain that he was denied due process. *Oyler*, 368 U.S. at 453–54. Petitioner is not entitled to habeas relief on his ninth claim.

### F.  Claim # 10. The Double Jeopardy claim.

Petitioner next argues that his convictions for manufacturing and possession with intent to deliver marijuana violate the Double Jeopardy Clause.

47

The Double Jeopardy Clause serves the function of preventing both successive punishments and successive prosecutions. *United States v. Ursery*, 518 U.S. 267, 273 (1996). The protection against multiple punishments prohibits the government from "punishing twice or attempting a second time to punish criminally for the same offense." *Witte v. United States*, 515 U.S. 389, 396 (1995) (quoting *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938)). Although the Double Jeopardy Clause protects a defendant against cumulative punishments for convictions on the same offense, the clause does not prohibit the state from prosecuting a defendant for such multiple offenses in a single prosecution. *Ohio v. Johnson*, 467 U.S. 493, 500 (1984). Moreover, whether punishments are multiple, so as to violate the Double Jeopardy Clause, is essentially a question of legislative intent. *Id.* at 499.

When multiple convictions are secured at a single trial, the test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment is that set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *Brown v. Ohio*, 432 U.S. 161, 166 (1977). As the Supreme Court explained that test in *Brown*:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. . . ." This test emphasizes the elements of the two crimes. "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. . . ."

48

*Id*. at 166 (quoting *Iannelli v. United States*, 420 U.S. 770, 785, n.17 (1975).

Analysis of this issue requires the Court to determine "whether [the legislature] intended to punish each statutory violation separately." *Pandelli v. United States*, 635 F.2d 533, 536 (6th Cir. 1980) (quoting *Jeffers v. United States*, 432 U.S. 137, 155 (1977)). "To determine the [legislative] intent it is necessary to examine the statutory language and the legislative history, as well as to utilize other techniques of statutory construction." *Pandelli,* 635 F.2d at 536. If the legislative intent is not clearly expressed or cannot be discerned by accepted techniques of statutory construction, then the Court must analyze the two crimes to determine if the elements completely overlap according to the *Blockburger* test. Under this test:

> [The Court] focuses on the statutory elements of the two crimes with which a defendant has been charged, not on the proof that is offered or relied upon to secure a conviction. . . . If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.

*United States v. Barrett*, 933 F.2d 355, 36061 (6th Cir. 1991) (internal citations and quotes omitted). Thus, the Double Jeopardy Clause is not violated merely because the same evidence is used to establish more than one statutory violation.

However, in deciding a habeas petitioner's Double Jeopardy claim, a federal habeas court is bound by a state appellate court's interpretation of different state statutes to permit a defendant who is convicted of multiple offenses to be punished

for both offenses. *See Palmer v. Haviland*, 273 F. App'x. 480, 486–87 (6th Cir. 2008). Once a state court has determined that the state legislature intended cumulative punishments for separate offenses, a federal habeas court must defer to that determination. *See Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

Michigan courts have held that convictions for both manufacture and possession of a controlled substance do not violate the Double Jeopardy Clause, because each offense requires proof of a fact that the other offense does not. *See People v. Baham*, 321 Mich. App. 228, 246–48 (2017).

The Michigan Court of Appeals determined that the Michigan Legislature intended cumulative punishment for the offenses of manufacturing and possession of a controlled substance. This Court sitting on federal habeas review is bound by that determination. *White v. Howes*, 586 F.3d 1025, 1029 (6th Cir. 2009). Because this determination is binding in federal habeas corpus, petitioner's double jeopardy claim lacks merit. *E.g.*, *Rodgers v. Bock*, 49 F. App'x. 596, 597 (6th Cir. 2002). Because the Michigan Court of Appeals clearly held that multiple punishments for the two crimes are permissible under Michigan law, the state trial court did not violate petitioner's federal right against double jeopardy. *Palmer*, 273 F. App'x. at 487.

### G. Claim # 11. The *Batson* claim.

Petitioner next alleges that the prosecutor unconstitutionally used a peremptory strike to excuse a Native American juror based on his ethnicity.

The Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from challenging potential jurors solely on account of their race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). A criminal defendant may establish a prima facie case of purposeful discrimination in the selection of a petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. *Id.* at 96. To establish such a case, a defendant must show that he or she is a member of a cognizable racial group and that the prosecutor has used peremptory challenges to remove members of the defendant's race from the jury venire. *Id.* The defendant must also show that these facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors from the petit jury on account of their race. *Id.* These relevant circumstances include the pattern of strikes and the prosecutor's questions and statements. *Id.* at 97. Once the defendant makes a prima facie showing, the burden then shifts to the prosecutor to offer a "race neutral explanation" for challenging the jurors. *Id.* The prosecutor's explanation does not have to rise to the level which would justify the exercise of a challenge for cause, but a prosecutor may not rebut a defendant's prima facie case of discrimination by simply stating that he challenged

jurors of the defendant's race on the assumption that they would be partial to the defendant because they were members of the same racial group. *Id.* The trial court must then determine whether the defendant carried his burden of proving purposeful discrimination. *Id.* at 98.

A "race neutral" explanation in the context of a *Batson* claim means "an explanation based on something else than the race of juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York*, 500 U.S. 352, 360 (1991). A race neutral explanation that is offered by the prosecution need not be persuasive or plausible; instead, the persuasiveness or the justification becomes relevant only when the trial court determines whether the opponent of the challenge has carried his burden of proving purposeful discrimination. *Purkett v. Elem*, 514 U.S. 765, 767–69 (1995).

On habeas review of a state conviction, a *Batson* claim involves "a mixed question of law and fact and 'necessarily focuses on the reasonableness of the decisions of the state courts—that is, whether those decisions constituted an unreasonable application of Supreme Court precedent.'" *Braxton v. Gansheimer*, 561 F.3d 453, 458 (6th Cir. 2009) (quoting *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003)) (additional citation omitted). However, the question of whether a

prosecutor intended to discriminate on the basis of race in challenging a potential juror is a question of historical fact. *Lancaster*, 324 F.3d at 429. "Under [the] AEDPA, primary or historical facts found by state courts are presumed correct and are rebuttable only by clear and convincing evidence." *Id.* at 429 (internal citations and quotations omitted). Therefore, "while a district court's ruling on a *Batson* claim presented on direct appeal is entitled to great deference and should not be disturbed unless it is clearly erroneous, 'the standard must be modified in the context of a § 2254 petition to give credence to § 2254(e)(1)'s requirement that facts found by a state court be presumed correct unless the petitioner rebuts this presumption by clear and convincing evidence.'" *Braxton*, 561 F.3d at 458 (quoting *Lancaster*, 324 F.3d at 429, n.1).

The third step of the *Batson* inquiry requires the party who challenges the peremptory challenge to "demonstrate that the purported explanation is merely a pretext for a racial motivation." *McCurdy v. Montgomery County*, 240 F.3d 512, 521 (6th Cir. 2001) *overruled on other grounds by Barnes v. Wright*, 449 F.3d 709 (6th Cir. 2006). "Because the primary defense to pretext based violations of *Batson* is the [trial] court's ability to assess the credibility of an attorney's representations, it is critical that the [trial] court independently assess the proffered justifications." *Id.* (citing *Hernandez*, 500 U.S. at 365). "In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a

peremptory challenge should be believed." *Miller–El v. Cockrell*, 537 U.S. 322, 339 (2003) (quoting *Hernandez*, 500 U.S. at 365). Then "the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination." *Hernandez*, 500 U.S. at 359. "[A] state court's finding of the absence of discriminatory intent is a 'pure issue of fact' accorded significant deference." *Miller–El*, 537 U.S. at 339.

In the present case, the trial judge and the Michigan Court of Appeals reasonably determined that the prosecutor had given valid race-neutral reasons for peremptorily challenging the Native American juror, Timothy Lince. Timothy Lince had identified himself as Native American and was peremptorily excused by the prosecution. (ECF No. 14-6, PgID 1076–78.) At a bench conference initiated upon the strike and in a record created after jury selection, the prosecutor explained that the notes from his staff on the jury questionnaire indicated Lince had a family history of distaste for police and prosecutors due to previous cases with individuals bearing that name. The staff member from the prosecutor's office testified that while he did not know if Timothy Lince in particular was related to the family known to dislike police and prosecutors, the staff member did testify that Lince was an uncommon name in the area and that a relation was likely for that reason. The staff member also testified that he was unaware of Lince's ethnicity when he made the notation on Lince's questionnaire. (ECF No. 14-9, PgID. 1137, 1158–60.) Given these facts, the

trial court credited the prosecution's explanation for dismissing Lince based not on his ethnicity, but because he was likely related to a family known to dislike police and prosecutors. (*Id.* at PgID 1161.)

A prospective juror's animosity or resentment towards law enforcement is a valid race-neutral reason under *Batson* for peremptorily challenging that juror. *See United States v. Harris*, 192 F.3d 580, 586–87 (6th Cir. 1999); *see also Pirtle v. DeWitt*, 31 F. App'x. 191, 192 (6th Cir. 2002). The trial judge reasonably concluded that the prosecutor offered a valid race-neutral reason for removing Mr. Lince from the jury. More importantly, the state trial judge credited the prosecutor's credibility in determining that the reasons offered by the prosecutor for excusing the juror were race-neutral and not motivated by a discriminatory intent. "[A] state court's finding of the absence of discriminatory intent is a 'pure issue of fact' accorded significant deference." *Miller–El*, 537 U.S. at 339. Although "reasonable minds" who reviewed the record might disagree about the prosecutor's credibility concerning his proffered reasons for excusing Mr. Lince, "on habeas review that does not suffice to supersede the trial court's credibility determination." *Rice v. Collins*, 546 U.S. 333, 341–42 (2006). Because the state trial judge's decision to credit the prosecutor's race-neutral explanation for peremptorily striking Mr. Lince in response to petitioner's *Batson* challenge was not an unreasonable determination of the facts in light of evidence

presented in state court, petitioner is not entitled to habeas relief on his *Batson* claim. *Id.*

### H. Claim # The systematic exclusion claim.

Petitioner next contends that racial minorities are systematically excluded from jury service in Cheboygan County.

Although a defendant has no right to a petit jury composed in whole or in part of persons of his or her own race, he or she does have the right to be tried by a jury whose members are selected by indiscriminatory criteria. *Powers v. Ohio*, 499 U.S. 400, 404 (1991) (internal citations omitted). While states may prescribe relevant qualifications for their jurors, members of a community may not be excluded from jury service on account of their race. *Id.*

A defendant, however, may not challenge the makeup of a jury merely because no members of his or her race are on a jury, but must prove that his or her race has been systematically excluded. *Apodoca v. Oregon*, 406 U.S. 404, 413 (1972). In order to establish a *prima facie* violation of the fair cross-section requirement, a defendant must show:

> (1) that the group alleged to have been excluded is a 'distinctive' group in the community;
>
> (2) that the representation of that group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and

(3) that the under-representation is due to the systematic exclusion of the group in the jury selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).

"More than mere numbers must be provided to establish" that members of a particular ethnic or racial group are systematically under-represented in the jury venire. *United States v. Greene*, 971 F. Supp. 1117, 1128 (E.D. Mich. 1997). The strength of the evidence of under-representation of the group in the venire is only one factor to be considered in determining whether a *prima facie* violation of the fair cross-section requirement has been established. Factors such as the nature of the process by which jury lists are composed and the length of time of under-representation, together with the strength of the evidence that purports to establish unfair and unreasonable representation also need to be examined. *Id.* (citing *Ford v. Seabold*, 841 F.2d 677 (6th Cir. 1988)).

Petitioner has presented this Court with no evidence regarding the racial make-up of the jury venire in this case or of the jury that was empaneled, nor has he even presented any statistics regarding the racial and ethnic makeup of Cheboygan County or of the juries that sit in Cheboygan County. Petitioner's claim is thus conclusory and unsupported. *Compare Garcia-Dorantes v. Warren*, 801 F.3d 584, 591–93, 600–03 (6th Cir. 2015) (systematic exclusion of minority jurors established where several experts, including statisticians, provided hard numbers regarding racial composition in various areas of Kent County in 2001-2002).

57

Petitioner failed to show that Native Americans or other racial minorities were systematically excluded from jury service in Cheboygan County at the time of his trial. Conclusory assertions of underrepresentation are insufficient to support a systematic exclusion claim. *See United States v. McCaskill*, 48 F. App'x. 961, 962 (6th Cir. 2002). Petitioner's failure to point to any evidence supporting a prima facie violation of the fair cross-section requirement defeats this claim. *Id.*

### I. Claims # 14 and 15. The sufficiency of evidence claims.

Petitioner next alleges that there was insufficient evidence to convict him of felony-firearm or harboring a fugitive.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not:

> ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318–19 (internal citation and footnote omitted) (emphasis in the original).

58

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Petitioner first contends that there was insufficient evidence to sustain his felony-firearm conviction, because the prosecutor failed to prove that he used the firearm to manufacture or possess the marijuana.

The elements of felony-firearm are that the defendant possessed a firearm while committing, or while attempting to commit, a felony offense. *Renico*, 506 F.3d at 448. Possession of firearm, and not the actual use of a firearm, is all that is required under the felony-firearm statute. "It is possession, not use, of a firearm during the

commission of a felony that satisfies the requirements of the statute." *People v. Beard*, 171 Mich. App. 538, 546 (1988). Moreover, "[t]he fact that the defendant did not possess a firearm at the time of arrest, or at the time of the police raid, is not relevant in the circumstances of this case." *People v. Burgenmeyer*, 461 Mich. 431 (2000). Petitioner possessed various firearms while he was manufacturing and possessing marijuana.

State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, of which federal habeas review is not available. *Sanford*, 288 F.3d at 862. Moreover, a federal court on habeas review must distinguish a sufficiency of evidence claim from state law claims which are disguised as *Jackson* claims. *Id.* at 860 (citing *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991)). Thus, "when a habeas petition is predicated upon just one of several plausible interpretations of underlying state law, federal courts have declined to review state convictions on insufficiency-of-evidence grounds." *Jenkins v. Dailey*, 348 F. App'x. 114, 119 (6th Cir. 2009). This Court must defer to the Michigan Court of Appeals' construction of the elements of state crimes. *See Coe v. Bell*, 161 F.3d 320, 347 (6th Cir. 1998). The Michigan Court of Appeals has determined that possession of a firearm during the commission of a felony, and

not the actual use of the firearm, is all that is required for a felony-firearm conviction. This Court must defer to that determination.

Petitioner, in his fifteenth claim, alleges that there was insufficient evidence to convict him of harboring a fugitive because his sister was on medical furlough from the county jail when the police raided his home.

The Michigan Court of Appeals on petitioner's direct appeal ruled:

> Finally, contrary to defendant's assumption, the prosecution was not required to prove Megan MacLeod's intent to escape jail in order to convict defendant for harboring a felon. For this, the prosecution had to prove only that defendant knowingly or willingly concealed or harbored Megan MacLeod, that the concealment or harboring was done for the purpose of concealment from a peace officer, and that at the time, Megan MacLeod was subject to a felony arrest warrant. We find from our review of the record that the evidence presented on each of these elements was sufficient to support the jury's verdict.

*MacLeod*, No. 326950, 2016 WL 3767496, at *12.

As with petitioner's fourteenth claim, the Michigan Court of Appeals determined that under Michigan law the facts in this case established the elements of harboring a felon. This Court must defer to that determination. Petitioner is not entitled to relief on his fifteenth claim.

### J.  Claims # 13 and # 17. The prosecutorial misconduct claims.

Petitioner next contends he was denied a fair trial because of prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly*, 416 U.S. at 643–45. To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his or her prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Harrington*, 562 U.S. at 103).

Petitioner first contends that the prosecutor abused his discretion in charging him with these various offenses.

Prosecutors enjoy considerable discretion in determining what criminal charges to bring. *United States v. Batchelder*, 442 U.S. 114, 124 (1979). Prosecutors may be influenced by the penalties available on conviction in making a charging

decision. This fact, in and of itself, does not give rise to a constitutional violation. *Id.* at 125.

All of the charges in this case were supported by probable cause and proven beyond a reasonable doubt to a jury. Petitioner's claim is without merit.

Petitioner next contends that the prosecutor presented perjured testimony. The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe*, 161 F.3d at 343. However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d 486, 517–18 (6th Cir. 2000).

Petitioner only points to inconsistencies between the various witnesses. Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F.3d at 343. Additionally, the fact that a

63

witness contradicts himself or herself or changes his or her story also does not establish perjury. *Malcum v. Burt*, 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003) (citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)). Conclusory allegations of perjury in a habeas corpus petition must be corroborated by some factual evidence. *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir. 1971). Petitioner presented no evidence to establish that any of the witnesses deliberately lied, hence, he is not entitled to relief on this claim.

Petitioner next contends that the prosecutor failed to use due diligence in attempting to produce *res gestae* witnesses. This Court already ruled that the prosecutor's failure to call these witnesses did not violate petitioner's right to confrontation. Petitioner is not entitled to relief on this claim.

Petitioner next contends that the prosecutor committed misconduct by referring to four uncharged deliveries, in violation of M.R.E. 404(b).

Although F.R.E. 404(b) and its state counterpart M.R.E. 404(b) generally prohibit a prosecutor from questioning a defendant about prior bad acts, the United States Supreme Court has never held that the federal constitution forbids a prosecutor from so doing, thus the rejection of petitioner's prosecutorial misconduct claim by the Michigan courts does not entitle petitioner to habeas relief. *See Wagner v. Klee*, 620 F. App'x. 375, 378 (6th Cir. 2015). Petitioner is not entitled to relief on his thirteenth and seventeenth claims.

### K. Claims # 21 and 23. The evidentiary law claims.

Petitioner next raises challenges to the admission of evidence under state law.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). A federal court is limited in habeas review to deciding whether a state court conviction violated the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (internal citation omitted).

Petitioner, in his twenty-first claim, alleges that the trial court violated M.R.E. 404(b) by admitting audiotapes of the controlled buys because they presented allegedly improper character evidence involving petitioner's uncharged drug deliveries.

Petitioner's claim that the state court violated M.R.E. 404(b) or any other provision of state law by admitting improper character evidence or evidence of prior bad acts is non-cognizable on habeas review. *See Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Estelle*, 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. United States* 493 U.S. 342, 352–53 (1990)

(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Petitioner next contends that the officers offered improper opinion testimony concerning the content of the audiotapes. The trial court at least implicitly concluded that the officers' testimony was permissible lay opinion under state evidentiary law. This Court sitting on federal habeas review may not conclude otherwise, thus, petitioner is not entitled to habeas relief on his claim that the officers' testimony was impermissible lay opinion testimony. *See Charles v. Thaler*, 629 F.3d 494, 500 (5th Cir. 2011). Petitioner is not entitled to habeas relief on his twenty-first and twenty-third claims.

### L. Claim # 25. The jury instruction claim.

Petitioner claims that the judge gave the jurors an erroneous instruction on the offense of felony-firearm.

An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right." *Donnelly*, 416 U.S. at 643. The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). The court must "inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Id.* (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).

The judge here gave the jurors the model Michigan jury instruction on the elements of felony-firearm. (ECF No. 14-11, PgID 1550–51.) When petitioner raised this claim in his post-conviction motion, the trial and appellate courts rejected the claim, implicitly finding that the instruction was an accurate reflection of Michigan law on the elements of felony-firearm.

Because the state courts found that the instruction given by the trial court accurately reflected Michigan law, this Court must defer to that determination and cannot question it. *Seymour v. Walker*, 224 F.3d at 558. Petitioner is not entitled to relief on his instructional error claim.

### M. Claim # 26. The entrapment claim.

Petitioner next contends that he is entitled to habeas relief because he was entrapped by law enforcement into committing these offenses.

It is well-established that entrapment is not a constitutional defense. *See Hampton v. United States*, 425 U.S. 484, 488–91 (1976) (plurality opinion); *Russell*, 411 U.S. at 430; *Sosa*, 389 F.3d at 648. Because entrapment is not a constitutional defense, it cannot form the basis for habeas relief. *Sosa*, 389 F.3d at 647–48; *Rodriguez*, 625 F. Supp. 2d at 566; *see also Lothridge v. United States*, 441 F.2d 919, 922 (6th Cir. 1971) (issue of entrapment could not be raised on collateral attack in a motion to vacate judgment and sentence brought pursuant to 28 U.S.C. § 2255 because no issue of constitutional dimensions was presented). Accordingly, petitioner's claim that the state court's denial of his entrapment defense was clearly erroneous under Michigan law is not cognizable in a federal habeas corpus petition. *Seeger v. Straub*, 29 F. Supp. 2d 385, 390–91 (E.D. Mich. 1998).

### N. Claim # 27. The transcript claim.

Petitioner next claims that the trial transcripts are inaccurate, because the court reporter failed to transcribe the audiotaped recordings of the controlled buys, which instead were admitted as prosecution exhibits. But neither state law nor federal law, certainly not federal constitutional law, required the court reporter to do so. *See People v. Perry*, 115 Mich. App. 533, 537 (Mich. Ct. App. 1982); *United States v.*

*Vazquez Guadalupe*, 407 F.3d 492, 496–98 (1st Cir. 2005). Petitioner is not entitled to relief on his twenty-seventh claim.

### O. Claim # 28. The ineffective assistance of appellate counsel claim.

Petitioner finally argues that appellate counsel was ineffective for failing to raise his eighth through twenty-seventh claims on his appeal of right.

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). However, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). A habeas court must defer twice: first to appellate counsel's decision not to raise an issue and secondly, to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 136 S. Ct. 1149, 1153 (2016) (per curiam) ("Given AEDPA, both Etherton's appellate counsel and the state habeas court were to be afforded the benefit of the doubt.").

Petitioner's eighth through twenty-seventh claims are meritless. "Appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Petitioner is not entitled to relief on his claim.

The Court denies the petition for writ of habeas corpus. The Court also denies petitioner a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith*, 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). Petitioner is denied leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See* Fed. R. App. P. 24(a).

## IV. CONCLUSION

Accordingly, the Court DENIES WITH PREJUDICE the petition for a writ of habeas corpus. The Court further DENIES a certificate of appealability and leave to appeal *in forma pauperis*.

IT IS SO ORDERED.

Dated:  September 3, 2020                      s/Paul D. Borman
                                               Paul D. Borman
                                               United States District Court Judge